THE GULF, COLORADO & SANTA FE RAILWAY COMPANY
v. L. B. GILL ET AL.

No. 68.

### Notice—Maps—Case in Judgment.

Sale by common source to the railway company of blocks 50 and 55, and so described in deed, and its road was built through number 55. It seems that this sale was made according to a map never recorded. The vendor subsequently sold to those under whom the defendants hold, certain lots according to another map, and not conflicting with blocks 50 and 55 as shown thereon. The vendees paid the purchase money, and had no actual notice of the extent of the claim of the railway under its purchase. Action by the railway company for the land claimed as part of block 55 ................................................. 285

*Held:* 1. The operation by the plaintiff of the railway upon the track through number 55 could only be notice to the extent the deed would be, if recorded ............................................. 286

2. The defendants purchasing according to the only map known, or that could be known by searching the records, could not be charged with knowledge of any other map .................................. 287

3. The railway company having failed to describe their purchase other than by block numbers of a map never described or recorded, are in greater fault than the subsequent purchasers shown to have given great care to ascertain the facts, they should not suffer .... ......... 287

ERROR to Court of Civil Appeals for Second District, in an appeal from Tarrant County.

*Leake, Shepard & Miller* and *J. W. Terry,* for appellant.—1. When W. B. Tucker and wife made their first map of their addition, and sold the railway company block 55, as therein designated, the dedication of streets and the lines of lots and streets became fixed and irrevocable. Oswald v. Grenet, 22 Texas, 94.

2. There was then, and is now, no statute requiring or providing for the record of a map of towns or additions thereto; and hence there could be no want of diligence on the part of the railway company.

3. The deed by Tucker and wife to Isham, under which W. H. and Sally Holt claim one of the small lots of Tucker's subdivision, was made December 5, 1881, and before appellant's deed was recorded; but before this deed was made the appellant entered on block 55, under a warranty deed, built its road, and was operating the same regularly; and this was sufficient notice to the said Isham of its title. Railway v. Broom, 33 Am. and Eng. Ry. Cases, 90; Day, Williams & Co. v. Railway, 41 Ohio St., 392; Hargis v. Keith, 13 S. W. Rep., 680.

*J. F. Cooper,* for appellees.—1. W. B. Tucker was the owner of the land, and had a right to plat it in making sales in such manner as he saw

fit. As between Tucker and the appellant, he might have bound himself by estoppel in exhibiting the McSweeney or Cetti map, but this estoppel would not bind a bona fide purchaser. The McSweeney map never had been placed of record, nor was seen by the appellees.

2. A map is an instrument of writing concerning land; and where there has been no actual survey, and a block of land is conveyed by a deed, and the property can be identified only in connection with the map, the map should be recorded, or the deed will not be record notice to a subsequent purchaser. Rev. Stats., art. 4231.

3. The record of the deed from Tucker and wife to plaintiffs of block 55, or the actual possession of the plaintiff by its railway track, would not be notice to a greater extent than the limits of the land could by reasonable diligence be ascertained; and the charge of the court fairly submitted this issue to the jury.

BROWN, Associate Justice.—W. B. Tucker and wife owned a tract of land in Fort Worth, which was laid out into blocks and lots as " Tucker's Addition " to that city. On the 25th day of June, 1881, Tucker and wife, for the consideration of $500, which was paid, made a deed to the plaintiff in error, conveying certain land in the city of Fort Worth, described as " blocks 50 and 55 in the Tucker's Addition to the city of Fort Worth." The deed was filed for record and recorded in the county clerk's office in Tarrant County on the 25th day of February, 1882. The railway company constructed its railway over a part of block 55 in the summer or fall of 1881.

After the making of the deed to the railway company, Tucker and wife made a deed to Edward Isham for one of the lots in controversy, the deed bearing date the 6th day of October, 1881, acknowledged on the 5th day of December, 1881, and recorded on the 6th day of that month. Isham paid the purchase money when the deed was delivered, and had no actual notice of the deed from Tucker and wife to the railway company.

After the record of the deed from Tucker and wife to plaintiff in error, Tucker sold other lots to different persons under whom the defendants claim, each of whom paid the purchase money.

Each of the purchasers of these lots employed counsel to examine the records, by whom the title was pronounced to be good. Tucker used a map in making the sale of these lots which showed that they were not a part of block 55, and the purchasers had no notice that there was any other map of the addition, nor did they know that the railway company claimed the land in controversy as part of the block purchased by it from Tucker and wife. The map used by Tucker in making the sales to defendants and those under whom they claim was made by Findley, at

Tucker's instance, but the defendants are not shown to have known that it was made after the sale to plaintiff in error.

Plaintiff in error claims that when it purchased block 55 from Tucker and wife a map called the "Cetti" map was used, and that they purchased according to it, which showed that block 55 extended on the west to Jones Street and embraced all the lots in controversy. The Cetti map was not recorded.

The railway of plaintiff in error was built on a part of the block 55, but the roadbed was 132 feet from the nearest point of the lots. It is not shown that plaintiff in error had on the block any improvement except the roadbed, with the grade and ditches caused in making it.

Judgment was given in the District Court for all of the defendants, which was affirmed on appeal by the Court of Civil Appeals.

If it were held that the possession which the evidence shows the railway company to have had would be notice of the character of its title to the land, which it is not necessary for us to decide in this case, such notice would be no more than if the deed were recorded; the possession would take the place of the record of the deed. Isham then would be in as good position as those who purchased after the record of the deed to plaintiff in error and the construction of the railway.

The record of the deed to the plaintiff in error afforded constructive notice to all subsequent purchasers of what the deed expressed, and no more. McLouth v. Hurt, 51 Texas, 120; Carter v. Hawkins, 62 Texas, 395. There was nothing expressed in the deed which would cause any prudent man to suspect that the boundaries of the block were other than as expressed, and no duty of inquiry arose from its inspection nor from any knowledge shown to have been possessed by the purchasers. The deed called for block 55; the map which Tucker exhibited and by which they purchased showed that this block did not embrace the lots which they were buying. They knew of no other map. There was none on record, and such purchasers had the right to rely upon this as a correct description of the land.

The railway company had the opportunity to secure its rights when it took the deed from Tucker, by giving the boundaries of their purchase in the deed, or it could have referred in its deed to the map with reference to which the purchase was made, and thus put all subsequent purchasers on inquiry for that map as containing a description of the block. If the map had been recorded and referred to in the deed by book and page of the record, this would have notified all subsequent purchasers of the limit of their claim, whether the map was properly recorded or not.

The persons under whom the defendants claim had no opportunity to guard against this imperfect description; they knew nothing of the "Cetti" map, nor any except that which Tucker exhibited to them. It was apparent from the deed that the sale was made and the block conveyed

according to a plat of the ground. There being none other known or accessible to them, the purchasers naturally and rightfully relied upon the one shown by Tucker to them. They employed competent persons to examine the records, and, so far as the facts show, exercised all the care that a prudent man could or would have exercised under like circumstances. If the claim of the plaintiff in error be true—that is, that Tucker conveyed to it by a map showing the block to extend to Jones Street, and intended to convey the block as so bounded on the west—then Tucker practiced a fraud in selling to defendants' vendors, and some one must suffer the loss. Plaintiff neglected those precautions which ordinary prudence would dictate, and relied upon a description wholly insufficient to give notice of the limits of the block as it claims to have purchased, and thus by want of care put it in the power of Tucker to practice the fraud.

It would be unjust to cast this loss upon the innocent and prudent purchaser for value, and allow the plaintiff in error to take the benefit of its own negligence. Under the facts as found by the Court of Civil Appeals the defendants were innocent purchasers in good faith, and entitled to be protected in their purchases as such.

Plaintiff in error has assigned a number of grounds for reversing the judgment, based upon supposed errors committed by the court in giving charges and in refusing others asked by it; but in the view that we take of the case they are immaterial, as no other verdict consistent with the law and justice of the case could have been rendered by the jury.

There is no error in the judgments of the Court of Civil Appeals nor of the District Court, and they are therefore affirmed.

*Affirmed.*

Delivered December 18, 1893.